## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTIRCT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SE PROPERTY HOLDINGS, LLC,** | * | |
| **Plaintiff,** | * | |
| vs. | * | NO. 1:17-cv-00413-TM-B |
| **RUSSELL G. JUDKINS and HIGHWAY 59, LLC,** | * | |
| **Defendants.** | * | |

## MEMORANDUM ORDER AND OPINION

A non-jury trial was held in this matter before the undersigned that began on October 31, 2018, and concluded on November 5, 2018. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, the Court finds the facts specially and states its conclusions of law separately.

### I. NATURE OF THE CASE

This fraudulent transfer action was brought by Plaintiff, SE Property Holdings, LLC ("SEPH" or "Plaintiff"), against Defendants Russell Judkins ("Judkins") and Highway 59, LLC ("Hwy 59") (collectively, "Defendants"). The only cause of action at issue in this case is Plaintiff's claim for actual fraudulent transfer pursuant to section 8-9A-4(a) of the Alabama Uniform Fraudulent Transfer Act (the "AUFTA"). Plaintiff alleges Judkins transferred his interest in a parcel of real property to Hwy 59 with the actual intent to hinder, delay, or defraud SEPH, as his creditor.

In the parties' Joint Pretrial Document, they agreed to the elements of Plaintiff's claim, which are set out in the AUFTA, ALA. CODE § 8-9A-1 *et seq.*, and, further, agreed SEPH is a creditor of Judkins, and Judkins transferred an interest in an asset. (Doc. 53, at 3). The disputed fact, as defined by the parties in their Joint Pretrial Document, is whether

the transfer was made with the intent to hinder, delay, or defraud a creditor. (Doc. 53, at 3). In resolving the triable issues, the Court has reviewed and considered the arguments presented, the testimony and exhibits admitted into evidence during the bench trial, and other portions of the Court's file where appropriate.

## II.  FINDINGS OF FACT

The Court finds Plaintiff proved the following facts by clear and convincing evidence:

1.  SEPH is the successor by merger to Vision Bank. Vision Bank made a series of loans to Coastal Construction, LLC ("Coastal"), a company that focused on the development of residential real estate on the Gulf Coast. Judkins, Hans Van Aller, III, and Robert Harris were the members of Coastal. Coastal's members, including Judkins, signed guaranties that made them jointly and severally liable for the funds that were loaned by Vision Bank. The final four loans by Vision to Coastal were in the amount of $1,695,000.00, $1,599,900.00, $1,248,143.50, and $1,073,258.66.

2.  Coastal, also, borrowed money from banks other than Vision Bank, such as Trustmark and RBC, and the Coastal members, including Judkins, guaranteed those loans. Additionally, Judkins, Van Aller, and Harris were the principal borrowers (rather than guarantors) on loans from Pen Air Federal Credit Union. In all, Judkins was a guarantor or borrower of between $15 million and $18 million in loans.

3.  Prior to the transfer at issue, Coastal's business was struggling. With the economy and real estate market in decline, Coastal was unable to sell its properties, and its members were required to personally pay the interest payments on Coastal's substantial loans. Further, at some point prior to early 2008, Harris ceased making contributions to Coastal. In early 2008, Coastal sued Harris in an effort to require him to make

contributions. Coastal was unsuccessful in that regard, so Judkins and Van Aller continued to be the only members who made Coastal's interest payments.

4. Coastal and its guarantors began to default on their loans in 2008. Most, if not all, of Coastal's loans went into litigation.

5. For example, Coastal's (and Judkins') last voluntary payment to Vision Bank was in September 2008. Vision Bank filed suit against Coastal, Judkins, Harris, and Van Aller on February 2, 2009. RBC Bank sued Coastal, Judkins, Harris, and Van Aller on March 10, 2009. Wachovia Bank sued Judkins and others on October 27, 2009. Pen Air Federal Credit Union sued Judkins, Harris, and Van Aller in June 2010. Although these lawsuits were filed after the subject transfer, they were imminent and foreseeable at the time of the transfers.

6. Vision Bank ultimately obtained a judgment against Judkins in the amount of $4,551,860.05.

7. On or about June 25, 2008, Judkins met with a Florida attorney, David Hightower, in a scheme to shield his assets from creditors. With Hightower's assistance, beginning on July 28, 2008, Judkins transferred select assets that were unencumbered and non-exempt, which could be reached by his creditors, to either himself and his wife, Linda Judkins ("Mrs. Judkins"), "as tenants by the entirety," a status under Florida law that makes such assets exempt from a creditor of only one spouse, or to Florida limited liability companies that were created by Hightower and owned in whole, or in part, by Judkins and Mrs. Judkins as tenants by the entirety.

8. One of those transfers is the subject of this lawsuit. Judkins and his business partner, Gary Sluder, owned real property located off Alabama State Route 59 ("Highway 59") in Gulf Shores, Alabama. Sluder and Judkins each owned a one-half interest in the

real property as tenants in common. Since June 1993, for over fifteen (15) years, Sluder and Judkins owned this real property in their personal names and leased it to Gene's Floor Covering II, Inc., their floor covering business that is located in Baldwin County, Alabama. Sluder and Judkins were partners with respect to Gene's Floor Covering II, Inc., but Judkins testified he controlled all aspects of the business and Sluder was a "silent partner" in the business.[1] As part of the scheme, on July 28, 2008, Hightower organized Hwy 59, a Florida limited liability company of which Judkins and Mrs. Judkins owned fifty percent (50%) as tenants by the entirety and Sluder and his wife, Cynthia Sluder, owned fifty percent (50%) as tenants by the entirety. Judkins and Sluder, then, transferred their interests in the subject real property to Hwy 59. The deed to Hwy 59 is dated August 29, 2008, and the deed was recorded on September 16, 2008. Judkins was not provided consideration in exchange for the transfer.[2] After the transfer to Hwy 59, Judkins continued to possess, and control, the property and use it for his floor covering business.

9. At trial, Plaintiff offered a real estate appraiser's testimony that the value of one hundred percent (100%) of the subject property was $795,000.00. Defendants did not offer any testimony in regard to the value of the property.

10. Contemporaneous with the subject transfer, and as part of the same representation, Hightower handled other transfers for Judkins.[3] Similar to the Hwy 59 transfer, Judkins transferred his shares of Gene's Floor Covering II, Inc., to GFC Holdings,

---

[1] The testimony indicated Sluder owned a separate "Gene's Floor Covering" business in Florida, but Judkins was not a partner in that business.

[2] Judkins, and his wife, as tenants by the entirety, received their interest in Hwy 59, or at least received the increase in value of that interest, but Judkins did not receive anything. Mrs. Judkins did not contribute anything to Hwy 59.

[3] Although SEPH only seeks the setting aside of the Hwy 59 transfer in this case, the other transfers effected at the same time and, according to Judkins, for the same reasons, are relevant to the crucial question of intent.

LLC, another Florida company that was formed by Hightower on July 28, 2008. Judkins and Mrs. Judkins owned one hundred percent (100%) of GFC Holdings, LLC, as tenants by the entirety. With Hightower's assistance, Judkins, also, transferred his and his wife's real property directly to themselves as tenants by the entirety. Hightower, also, drafted a mortgage agreement pursuant to which Judkins and his wife as tenants by the entirety secured a purported loan to Judkins and Van Aller.

11. The effect of the foregoing transfers was property that would have been reachable by Judkins' personal creditors became exempt from, or unreachable by, his creditors. Indeed, the testimony was, after the foregoing transfers, Judkins did not have unencumbered, non-exempt assets that remained in his name.

12. Judkins and Mrs. Judkins testified they employed Hightower's legal services because Judkins' father-in-law was dying, which gave them a sense of urgency to have their estates planned. Hightower testified to the estate planning advantages of the foregoing transfers and, in addition to the transfers, Judkins and Mrs. Judkins executed documents such as wills, durable powers of attorney, and advance healthcare directives. However, the testimony that estate planning was the reason for the subject transfer was simply not credible. Judkins' father-in-law was in poor health for years prior to the transfers, and Judkins and Mrs. Judkins had not made an estate plan. Additionally, Judkins testified at his deposition his father-in-law did not have a will and left his estate in disarray upon his death, but at trial, the undisputed evidence was Judkins' father-in-law did have a will. Judkins admitted one of the reasons for the subject transfer was in the case he was sued, but he claimed he was concerned about a premises liability suit rather than collection cases by Coastal's lenders. This testimony was not credible. Hightower had little to no independent recollection of the representation, but his notes reflected Judkins' joint and

several guarantor liability of $15 million to $18 million of Coastal's debt was one of the topics discussed by Judkins with Hightower.

13. At the time of the transfer, and immediately following the transfer, Judkins was "insolvent" as that term is defined by the AUFTA. On this topic, Plaintiff's expert Stacy Cummings testified the sum of Judkins' debts was greater than the sum of his assets at the time of the transfer(excluding property to the extent generally exempt under nonbankruptcy law). Defendants did not offer an expert on the issue of insolvency.

14. Judkins did not disclose the subject transfer to Vision Bank. Judkins made some changes to his Personal Financial Statement but none that would have put Vision Bank on notice that, following the transfers that were handled by Hightower, he had placed significant non-exempt assets out of the reach of his creditors.

15. At the same time as Judkins transferred assets, Judkins' fellow Coastal member, Van Aller, made transfers to a family-owned limited partnership. Judkins and Van Aller denied they spoke to each other about the asset transfers. However, some of Van Aller's transfers were within days of Judkins' transfers, and Judkins and Van Aller admitted they spoke to each other frequently and were close friends. Further, Van Aller actually signed the mortgage agreement that Hightower handled for Judkins and Mrs. Judkins in connection with the "estate planning."

16. Judkins transferred his interest in the subject real property with the actual intent to hinder, delay, or defraud his creditor, SEPH. Hwy 59 was created at the direction of Judkins for the purpose of fraudulently transferring assets, and Hwy 59 was an instrument of, and participant in, fraud since its inception. Hwy 59 was controlled by Judkins with respect to this transfer and shared Judkins' intent that this transfer hinder, delay, or defraud Judkins' creditor, SEPH. Further, in effecting the subject transfer,

Defendants consciously or deliberately engaged in fraud, wantonness, and malice with regard to SEPH.

### III. CONCLUSIONS OF LAW: LIABILITY

This case is before the Court in diversity jurisdiction, and the parties agree the substantive law of the State of Alabama applies. (Doc. 53, at 3.) When this action was commenced, Plaintiff was a citizen of Ohio, and Defendants were citizens of Florida.

SEPH brings a claim for actual fraudulent transfer pursuant to section 8-9A-4(a) of the AUFTA. That section provides, "[a] transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor." ALA. CODE § 8-9A-4(a). Thus, to prevail, SEPH was required to prove "[t]hat the plaintiff is a creditor of the debtor," and "[t]hat the debtor transferred an asset or an interest in an asset with the actual intent to injure, delay or defraud the plaintiff or any other creditor of the debtor." Ala. Pattern Jury Instr. Civ. 18.22 (3d ed.).[4]

At trial, it was undisputed SEPH is a creditor of Judkins, and Judkins is a debtor of SEPH, as those terms are defined by the AUFTA. Judkins was also a debtor of SEPH at the time of the subject transfer.[5] Also, it was undisputed at trial Judkins transferred an interest in an asset, namely his interest in the subject real property.

---

[4] In the Joint Pretrial Document, the parties agreed the legal elements of the actual fraudulent transfer claim are as set forth in instruction 18.22 of the Alabama Pattern Jury Instructions in Civil Cases. (Doc. 53, p. 3).

[5] Under the AUFTA, a "creditor" is a person who has a "claim," and a "debtor" is a person who is liable on a "claim." ALA. CODE § 8-9A-1(4) & (6). "Claim" is defined as "[a] right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and specifically shall include the nonpayment of child support pursuant to a court order." ALA. CODE § 8-9A-1(3). Based on the guaranties, Judkins and Vision Bank/SEPH had a creditor/debtor relationship at the time of the transfers.

The critical issue is whether the transfer was effected with the requisite level of intent. "Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor." *Cox v. Hughes*, 781 So. 2d 197, 201 (Ala. 2000). The AUFTA includes a list of eleven (11) factors that may be considered to determine "actual intent." ALA. CODE § 8-9A-4(b). These factors are sometimes called "badges of fraud." *See In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998) (referring to the eleven factors that may be considered to determine fraudulent intent and are found in the AUFTA as "badges of fraud"). The factors are not exclusive, as indicated by the statute. *See* ALA. CODE § 8-9A-4(b) (providing "consideration may be given" to the listed factors). The statutory factors are whether:

(1) The transfer was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer was disclosed or concealed;

(4) Before the transfer was made the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

ALA. CODE § 8-9A-4(b). Many of the badges of fraud are met in this case.

Defendants have rightly conceded the transfer was to an insider. Further, it is significant the transfer was to a limited liability company of which Judkins and Mrs. Judkins owned fifty percent (50%) as tenants by the entirety. "Conveyances of property between family members in the face of a pending suit against the grantor must undergo especially careful scrutiny." *Granberry v. Johnson*, 491 So. 2d 926, 929 (1986) (citing *Reese v. Smoker*, 475 So. 2d 506 (Ala. 1986)). Alabama courts have long recognized "[s]uch purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny." *Waddle v. Great S. Phosphate Co.*, 63 So. 462, 463 (Ala. 1913).

As to the second factor, Judkins retained possession or control of the transferred property. Prior to the transfer, the property was leased to Judkins' business, Gene's Floor Covering II, Inc. After the transfer, the property continued to be leased to Gene's Floor Covering II, Inc., pursuant to the same terms and conditions as before. Further, Judkins continued to receive the rental income via Hwy 59. It was clear at trial Judkins was in control and possession of the property before and after the transfer and up to the time of trial.

Third, the transfer was not disclosed to Vision Bank. Judkins' Personal Financial Statement, which was provided to Vision Bank a few months after the transfer, did not list Hwy 59 as an asset, and Judkins admitted he misidentified the asset on his Personal Financial Statement. Further, the Personal Financial Statement did not inform Vision Bank Judkins made personal assets exempt when he transferred them to tenant by the entirety

ownership, which is the type of change in financial condition of which Judkins agreed to notify Vision Bank.

Fourth, while Judkins does not appear to have been personally sued at the time of the transfer, there is no doubt that he faced an imminent threat of litigation on the date of the transfer. Judkins knew about his and Coastal's dire financial situation. Van Aller, the manager of Coastal, frequently spoke with Judkins. Judkins and Van Aller made Coastal's substantial interest payments when Coastal was unable to sell properties. Coastal made only one additional payment after the deed to Hwy 59 was recorded in connection with the subject transfer. Coastal and its guarantors, including Judkins, defaulted, and the collection cases commenced.[6] Hightower's notes reflect Judkins told Hightower about Judkins' joint and several guarantor liability for Coastal's $15 million to $18 million of loans.

The fifth factor is whether the transfer was of substantially all of the debtor's assets. The subject transfer was not of substantially all of Judkins' assets. However, after the series of transfers effected around the same two-month time period as the subject transfer, substantially all of Judkins' assets were either exempt from creditors or encumbered by mortgages.

As to the eighth factor, the value received by Judkins was not reasonably equivalent to the value of the asset transferred. In fact, Judkins did not receive consideration for the transferred asset. Judkins and Mrs. Judkins, as tenants by the entirety, received an interest in Hwy 59. Florida law states, "property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole." *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 53 (Fla. 2001). To the extent Judkins

---

[6] There was also evidence of a pre-transfer from an August 20, 2008 letter that notified Judkins, and others, a loan would mature on October 12, 2008, and would not be renewed unless the principal was reduced by twenty percent (20%) at closing.

can be considered to have received any consideration for the transfer, it is not valuable consideration from the perspective of SEPH. Numerous courts that have interpreted fraudulent transfer statutes, including the Uniform Fraudulent Transfer Act, have recognized whether reasonably equivalent value was received must be determined from the perspective of the creditor.[7] The Official Comments to the Uniform Fraudulent Transfer Act state: "'Value' is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors. Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition." UNIF. FRAUDULENT TRANSFER ACT § 3 CMT. 2 (UNIF. LAW COMM'N 1984). "[W]hen property is held as tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse." *Beal Bank, SSB*, 780 So. 2d at 53 (citations omitted). Exempt tenancy by the entireties property has no utility from the viewpoint of the creditor of one spouse.

The ninth factor is whether the debtor was insolvent or became insolvent shortly after the transfer was made. SEPH demonstrated Judkins was insolvent at the relevant time because his debts exceeded his assets at a fair valuation. *See* ALA. CODE § 8-9A-2(a) ("A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."). SEPH presented unrebutted expert testimony on this point. Defendants' attorney argued Ms. Cummings did not consider assets such as intangible assets, streams of income, and net operating losses for periods when Judkins' allowable

---

[7] *See In re TransTexas Gas Corp.*, 597 F.3d 298, 306 (5th Cir. 2010); *In re Sergio*, 552 B.R. 9, 21 (D. Mass. 2016); *In re David Cutler Indus., Ltd.*, 502 B.R. 58, 73 (E.D. Pa. 2013); *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 667 (N.D. Tex. 2011); *ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 337 (S.D. Tex. 2008).

tax deductions were greater than his taxable income. However, Defendants did not specify any particular assets (rather than broad categories of potential assets) that Ms. Cummings did not consider. Nor did Defendants present evidence of the value of any such assets as of the relevant date. Further, Ms. Cummings testified she considered all of the assets that Defendants disclosed during the litigation, and Defendants did not rebut that testimony.

The tenth factor is whether the transfer occurred shortly before, or shortly after, a substantial debt was incurred. The Coastal notes in favor of Vision Bank that Judkins guaranteed were renewed, modified, or extended shortly before the transfers, with the maturity dates listed as February 2009. However, this factor is accorded little weight because the evidence at trial was not that the transfers were prompted by the recent incurring of substantial debt. Rather, the evidence at trial demonstrated the transfers were prompted by Coastal's (and its members') impending default on their debts to a number of financial institutions, including Vision Bank.

Weighing the badges of fraud as a whole, they overwhelmingly confirm the subject transfer was intended to injure, delay, or defraud Judkins' creditor, SEPH.[8] Other factors, also, demonstrate Judkins' intent. Mr. Judkins admitted one of the reasons for the transfers was to protect his assets if he was sued, but he testified his concern was hypothetical premises liability rather than his millions of dollars of guarantor liability and imminent

---

[8] The Court gives little to no weight to the sixth, seventh, and eleventh factors. As to the sixth factor, Judkins did not flee or hide, but the Court does not view that fact as a strong indicator of Judkins' intent in this case. Based on the Official Comments to the Uniform Fraudulent Transfer Act, the seventh factor, whether the debtor removed or concealed assets, refers to the concealment or removal of goods or assets or their proceeds, and thus is difficult to apply to a real property transfer. UNIF. FRAUDULENT TRANSFER ACT § 4 CMT. 6(g) (UNIF. LAW COMM'N 1984). However, as noted, Judkins certainly removed assets from his own personal name, and he did not fully, and completely, disclose the transfers to Vision Bank. Therefore, the eleventh factor is not applicable in this case.

default.[9]  This testimony was not credible because, among other reasons, Judkins discussed his guarantor liability with the attorney who handled the transfers. Judkins' friend and partner, Van Aller, who was, also, personally liable for many of the same debts, transferred assets around the same time as Judkins. Judkins' and Mrs. Judkins' testimony that these transfers were prompted by Mrs. Judkins' father's illness was not credible for the reasons previously stated. Finally, Judkins is presumed to have known the effect of the subject transfer (*i.e.*, the subject property became exempt from creditors) because his attorney's knowledge of the effect is imputed to Judkins based on their principal-agent relationship. *See First Ala. Bank of Montgomery, N.A. v. First State Ins. Co., Inc.*, 889 F.2d 1045, 1060 n.8 ("[I]n Alabama and elsewhere the general rule is that a principal is chargeable with and bound by the knowledge of his agent while acting within the scope of his authority. . . . [T]he reason courts impose constructive knowledge upon a principal is to avoid the injustice which would result if the principal could have an agent conduct business for him and at the same time shield himself from the consequences which would ensue from knowledge of conditions or notice of the rights and interests of others had the principal transacted his own business in person.").

For the foregoing reasons, the Court concludes Judkins and Hwy 59 effected the subject transfer with the actual intent to hinder, delay, or defraud Judkins' creditor, SEPH. Further, Plaintiff proved Defendants' liability by clear and convincing evidence.

### IV.   CONCLUSIONS OF LAW:  REMEDY

The AUFTA grants the trial court wide discretion in fashioning an appropriate remedy.  Section 8-9A-7 of the AUFTA provides:

---

[9] Judkins admitted that neither he, Sluder, nor the business had been sued since they acquired the subject property in 1993, and liability insurance existed in the event of such a suit.

> (a) In an action for relief against a transfer under this chapter, the remedies available to creditors, subject to the limitations in Section 8-9A-8, include:
>
>> (1) Avoidance of the transfer to the extent necessary to satisfy the creditor's claim;
>>
>> (2) An attachment or other provision remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by any applicable provision of any other statute or the Alabama Rules of Civil Procedure;
>>
>> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
>>
>>> a. An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
>>>
>>> b. Appointment of a receiver to take charge of the asset transferred or other property of the transferee; or
>>>
>>> c. Any other relief the circumstances may require.
>
> (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

ALA. CODE § 8-9A-7. Additionally, section 8-9A-8(b) of the AUFTA provides "to the extent a transfer is voidable in an action by a creditor under Section 8-9A-7(a)(1), the creditor may recover . . . judgment for conveyance of the asset transferred. The judgment may be entered against . . . [t]he first transferee of the asset or the person for whose benefit the transfer was made." ALA. CODE § 8-9A-8(b)(1).

The transferred asset at issue was Judkins' undivided one-half interest in the subject real property in fee simple as a tenant in common. Following the subject transfer, Judkins' former interest is owned by Hwy 59. SEPH is a judgment creditor that holds a judgment against Judkins in the principal amount in excess of $4 million, which is, now, worth over $6 million due to years of post-judgment interest. The transfer of Judkins' one-half interest is voidable, and the Court deems it appropriate to enter a judgment for conveyance of the

asset transferred pursuant to sections 8-9A-7(a)(1) and 8-9A-8(b)(1) of the AUFTA. Thus, the first component of the remedy in this case is Defendant Hwy 59 shall transfer the subject asset to Plaintiff by quitclaim deed.

Next, the Court decided an award of punitive damages is appropriate in this case. Alabama's punitive damages statute provides, "[p]unitive damages may not be awarded in any civil action . . . other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." ALA. CODE § 6-11-20. Alabama "cases have uniformly held that punitive damages may be awarded in actions for fraud if there is evidence from which the jury can conclude that the fraud was malicious, oppressive, or gross." *State Farm Mut. Auto Inc. Co. v. Ling*, 348 So. 2d 472, 476 (Ala. 1977); *see also Myers v. Redmill*, 96 So. 2d 450, 452 (1957) ("It appears to us that a fraudulent conveyance as to a plaintiff with a demand sounding in punitive damages is infected with just as much fraud as one against a plaintiff with a demand in compensatory damages.")

The AUFTA states the act is supplemented by the principles of law and equity unless displaced by its provisions. ALA. CODE § 8-9A-10. Nothing in the AUFTA displaces Alabama law in regard to punitive damages. Indeed, the AUFTA authorizes the Court to award "any other relief the circumstances require." ALA. CODE § 8-9A-7(a)(3)(c); *see also Johns v. A.T. Stephens Enters., Inc.*, 815 So. 2d 511, 516 (Ala. 2001) ("We conclude that the [AUFTA] permits damages awards in cases involving fraudulent conveyances, but that the facts of this case require such an award."). Therefore, section 8-

9A-7(a)(3)(c) of the AUFTA allows for the award of punitive damages if the circumstances require.[10]

The circumstances of this case direct the undersigned to conclude an award of punitive damages against Defendants is merited. Plaintiff proved by clear and convincing evidence Judkins transferred the subject property for the purpose of evading his creditor, SEPH; Hwy 59 was created at the direction of, controlled by, and shared the intent of Judkins with respect to the transfer; and Defendants consciously or deliberately engaged in fraud, wantonness, and malice with regard to SEPH.[11]

The factors enunciated in *BMW North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996), and *Aetna Life Ins. Co. v. Lavoie*, 505 So. 2d 1050, 1062 (Ala. 1987) are considered when determining whether the *amount* of a punitive damage award is reasonable. The *Gore* factors include:

> (1) the degree of reprehensibility of the defendant's misconduct;
>
> (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and
>
> (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Gore*, 517 U.S. at 574.

The *Lavoie* factors are:

---

[10] *See, e.g., Klein v. Weidner*, 729 F.3d 280, 295 (3d Cir. 2013) (holding that punitive damages are available under the Pennsylvania UFTA); *Macris & Assocs., Inc. v. Neways, Inc.*, 60 P.3d 1176, 1181 (Utah Ct. App. 2002) (Utah UFTA); *Volk Const. Co. v. Wilmescherr Drusch Roofing Co.*, 58 S.W. 3d 897, 900 (Mo. Ct. App. 2001) (Missouri UFTA); *Henderson v. Henderson*, No. CV-00-53, 2001 WL 1719192, at *2 (Me. Super. 2001) (Maine UFTA); *Locafrance United States Corp. v. Interstate Distribution Servs., Inc.*, 451 N.E.2d 1222, 1225 (Ohio 1983) (Ohio UFCA).

[11] Hwy 59, a legal entity, can only act through agents. *See Townsend Ford, Inc. v. Auto-Owners Ins. Co.*, 656 So. 2d 360, 363 (Ala. 1995) ("A corporation is a legal entity, an artificial person, and can only act through agents."). Judkins was Hwy 59's agent and, in fact, was in control of Hwy 59, which was created for Judkins' own fraudulent purpose. Judkins' intent is the intent of Hwy 59.

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.

(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "cover-up" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.

(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.

(4) The financial position of the defendant would be relevant.

(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.

(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.

(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.

*Lavoie*, 505 So. 2d at 1062.

The Court has weighed these factors and determined an award of punitive damages of $300,000.00, which, based on the evidence provided by SEPH's appraiser, is less than half of the value of the transferred asset, satisfies the requirements set forth in *Gore* and *Green Oil*, and adequately satisfies the purposes of punitive damages, to deter future wrongful acts and punish past wrongful conduct. Judkins and Hwy 59 effected the subject transfer with the intentional and deliberate purpose of injuring Judkins' creditor, SEPH. As admitted by Judkins, the subject transfer was part of a series of similar transfers. It is clear Judkins' and Hwy 59's intent with respect to those other transfers established a pattern of conduct. This series of transfers had the effect of depriving creditors of all, or

almost all, of Judkins' collectible assets. Judkins attempted to conceal and hide the fact of the transfer, and the Court determines he knowingly offered a false reason for the transfers (*i.e.*, the "estate planning" defense). Hwy 59 was created by Judkins, controlled by Judkins, and Judkins was its agent. Judkins' and Hwy 59's wrongful conduct was profitable to them in that they shielded a valuable asset from creditors, which could then be leased to Judkins' business. The financial condition of Judkins, who continues to have substantial assets held tenants by the entirety with his wife, while being insolvent as an individual due to the many millions of dollars of judgments against him, has been taken into account. Hwy 59, created for the purpose of defrauding creditors, is an instrument of fraud that would not exist except for Judkins' and Hwy 59's fraud, and thus Hwy 59's financial condition is not a significant consideration in this analysis. Judkins, Hwy 59, and others should be deterred from engaging in any future action of this manner. Without an award of punitive damages or attorneys' fees, there would be no deterrence to a debtor weighing whether to make a fraudulent transfer. This is because the debtor would only lose the same asset he would have lost if he had not made a fraudulent transfer. In this case, there was not physical harm or criminal sanctions, and there are other civil fraudulent transfer actions against Judkins (although none that have proceeded to judgment), all of which mitigate the award. For all of these reasons, as well as those stated in the factual findings and legal conclusions, the Court has determined an award of $300,000.00 is appropriate in this case.

The Court has also determined an award of attorneys' fees is appropriate. Again, the AUFTA authorizes the Court to award "any other relief the circumstances require." ALA. CODE § 8-9A-7(a)(3)(c). Plaintiff has no doubt been required to expend significant resources to discover and investigate the fraud, bring the case, and litigate the case to its

conclusion. This matter would not have been necessary if Judkins and Hwy 59 did not engage in fraudulent behavior. Creditors should not be discouraged from bringing meritorious fraudulent transfer actions by the potential fees and costs. Additionally, it is significant Judkins and Hwy 59 acted with the deliberate and actual intent to defraud. Even if the AUFTA did not give courts broad discretion to award any relief the circumstances require, Alabama precedent allows for recovery of attorneys' fees in the presence of "fraud, willful negligence or malice." *Reynolds v. First Ala. Bank of Montgomery, N.A.*, 471 So. 2d 1238, 1243 (Ala. 1985). As discussed, the Court found fraud and malice in this case.

## V. CONCLUSION

Based on the above, the Court finds Plaintiff established by clear and convincing evidence Defendants violated section 8-9A-4(a) of the Alabama Uniform Fraudulent Transfer Act. Therefore, the Court orders as a remedy the following pursuant to its Judgment (Doc. 64) that was entered on November 5, 2018:

1. Hwy 59 shall transfer the subject asset to Plaintiff by quitclaim deed;

2. an award of $300,000.00 is entered in favor of Plaintiff and against all Defendants as "other relief the circumstances may require" or as punitive damages pursuant to section 8-9A-7(a)(3)(c) of the Alabama Uniform Fraudulent Transfer Act and the law cited herein; and

3. Plaintiff will be awarded costs and reasonable attorneys' fees as determined by the Court.

**DONE** and **ORDERED** this the 11th day of January 2019.

/s/ Terry F. Moorer
**TERRY F. MOORER**
**UNITED STATES DISTRICT JUDGE**